# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
:
CARLTON THEODORE LANDIS,                :
:
Plaintiff,                :
:
v.                        :        Civil Action No. 21-0504 (CKK)
:
FEDERAL BUREAU OF PRISONS, *et al.*,    :
:
Defendants.               :
_____ :

## <u>MEMORANDUM OPINION and ORDER</u>

Plaintiff brings this action under the Freedom of Information Act ("FOIA"), *see* 5 U.S.C.

§ 552.  Now before the Court is Defendants' Motion for Summary Judgment (ECF No. 55).  For

the reasons discussed below, the motion is GRANTED IN PART and DENIED IN PART

WITHOUT PREJUDICE.[1]

---

[1] The Court's consideration focused on the following documents:
- Defendants' Memorandum of Points and Authorities in Support of their Partial Motion for Summary Judgment (ECF No. 55-1, "Defs.' Mem."), Defendants' Statement of Material Facts As To Which There Is No Genuine Issue (ECF No. 55-2, "Defs.' SMF"), and the declarations of Lee-Anne Eichensehr (ECF Nos. 55-3 "First Eichensehr Decl.") and Adam C. Siple (ECF No. 55-5, "Siple Decl.")
- Plaintiff's Brief in Opposition to the Defendant's Motion for Summary Judgment (ECF No. 61, "Pl.'s Opp'n")
- Plaintiff's Response to the Defendants' Statement of Material Facts (ECF No. 62)
- Defendants' Reply in Further Support of their Motion for Summary Judgment (ECF No. 63, "Reply") and the second declaration of Lee-Anne Eichensehr (ECF No. 63-1, "Second Eichensehr Decl.")
- Errata (ECF No. 69, "Supp. Second Eichensehr Decl.")

# I. BACKGROUND

## A. Procedural History

When plaintiff filed his complaint (ECF No. 1) on November 4, 2019, in the United States District Court for the Northern District of Illinois, he was designated to the United States Penitentiary in Thomson, Illinois.  Generally, plaintiff demanded the release of information responsive to FOIA requests submitted to the Federal Bureau of Prisons ("BOP"), the Office of Personnel Management ("OPM"), the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and the Executive Office for United States Attorneys ("EOUSA").  *See* Compl. at 2, 7.[2] Pursuant to the Illinois court's February 17, 2021, order (ECF No. 27), the case was transferred to this district on February 18, 2021 (ECF Nos. 29-30).

Defendants filed an answer (ECF No. 42) on July 28, 2021, and their motion for partial summary judgment (ECF No. 55), filed on May 4, 2022, is fully briefed.  The motion pertains to BOP and ATF only.  *See* Defs.' Mem. at 5; Reply at 1 n.1.  Because defendants' responses to plaintiff's FOIA requests to OPM and EOUSA are the subjects of his Motion for Summary Judgment and Brief in Support of Motion for Summary Judgment (ECF No. 64), and Defendants' Opposition to Plaintiff's Motion for Summary Judgment and Defendant EOUSA and OPM's Cross-Motions for Summary Judgment (ECF Nos. 67-68), the Court does not address any argument pertaining to OPM and EOUSA in this Memorandum Opinion and Order.

---

[2]  Unless indicated otherwise, all page numbers cited in this Memorandum Opinion and Order are those assigned by the Case Management/Electronic Case Filing System (CM/ECF).

**B. FOIA Requests to the Federal Bureau of Prisons**

**1. FOIA 2019-01567**

By letter dated December 25, 2018, plaintiff submitted a FOIA request to BOP for the names, salaries, position descriptions and past and present duty stations of case managers, counselors, correctional officers, chaplains and teachers employed by BOP at the United States Penitentiary in Lewisburg, Pennsylvania ("USP Lewisburg"). *See* Defs.' SMF ¶ 2; First Eichensehr Decl., Ex. A at 2-3.

BOP received the request on January 28, 2019, First Eichensehr Decl. ¶ 5, and responded by letter dated December 2, 2019, *see* Def.'s SMF ¶ 6; *see generally* First Eichensehr Decl., Ex. B.  It released 38 pages of records in full, to include descriptions for the case manager, correctional counselor, senior correctional officer, chaplain, and teacher positions. *See generally* First Eichensehr Decl., Ex. C at 10-47.  In addition, BOP released one page in part, regarding salary range for each position, after having redacted under Exemptions 6 and 7(C) the names of two BOP staff members referenced in the heading of an email message. *See id.*, Ex. C at 9. Under these same exemptions BOP denied in full plaintiff's "request for past and present personal identifiable information on staff at USP Lewisburg, to the extent that non-public records exist, without consent, proof of death, or an overriding public interest" on the ground that "disclosure . . . would invade [their] personal privacy." *Id.*, Ex. B at 6.

By letter dated December 10, 2019, plaintiff appealed BOP's determination administratively to the Justice Department's Office of Information Policy ("OIP").  Defs.' SMF ¶ 7; *see* First Eichensehr Decl., Ex. D at 49-50.  OIP affirmed BOP's determination "on partly modified grounds," explaining:

> As to [plaintiff's] request for the names and identifying information of certain staff members, to the extent that non-public responsive

> records exist, disclosure of the requested records concerning a third-party individual would constitute a clearly unwarranted invasion of personal privacy.  See 5 U.S.C. § 552(b)(6).  Further, it is reasonably foreseeable that releasing any non-public records, to the extent such records exist, would harm the interests protected by this exemption.  Because any non-public records responsive to [plaintiff's] request would be categorically exempt from disclosure, BOP properly asserted Exemption 6 and was not required to conduct a search for the requested records.

First Eichensehr Decl., Ex. E at 54.

### 2. FOIA 2019-03024

Plaintiff's second request to BOP, dated March 18, 2019, sought "all information pertaining to all civil suits rendered against any prison official employed at USP Lewisburg," Defs.' SMF ¶ 4, including the court, case caption, civil action number, trial dates, date and terms of settlement, relief granted, and the name of any individual found culpable, *see* First Eichensehr Decl., Ex. F at 58.  BOP received the request on March 25, 2019, First Eichensehr Decl. ¶ 5, and on November 27, 2019, released in full six pages of records, Defs.' SMF ¶ 8; *see* First Eichensehr Decl., Ex. G at 61.  Plaintiff did not appeal this determination administratively to OIP.  Defs.' SMF ¶ 12.

### C. FOIA Requests to the Bureau of Alcohol, Tobacco, Firearms and Explosives

From the ATF, plaintiff requested information about (1) federal firearms licensees ("FFLs") and federal explosives licensees ("FELs") in Pennsylvania, and (2) ATF's administration generally.  *See* Defs.' SMF ¶¶ 18-19; Siple Decl., Ex. A.  With a letter dated June 15, 2021, *see* Siple Decl., Ex. B, ATF released in full a list of FFLs, in Pennsylvania, Defs.' SMF ¶ 20, and under Exemptions 6 and 7(F), denied in full the request for FELs, *id.* ¶ 21; Siple Decl. ¶ 4.  Lastly, ATF deemed plaintiff's request for information about ATF's administration unclear and overbroad, and offered plaintiff an opportunity to clarify the request.  Defs.' SMF ¶

22.  Plaintiff did not respond, however, and since has not disputed ATF's denial of this portion of the request.  *See id.*; Siple Decl. ¶¶ 15-16.

## II. LEGAL STANDARD

A FOIA case typically is resolved on a motion for summary judgment.  *See Petit-Frere v. U.S. Attorney's Office for the Southern District of Florida*, 800 F. Supp. 2d 276, 279 (D.D.C. 2011) (citations omitted), *aff'd*, No. 11-5285, 2012 WL 4774807, at *1 (D.C. Cir. Sept. 19, 2012) (per curiam).  The Court grants summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An agency may meet its burden solely on the basis of affidavits or declarations, *see Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999), as long as they "describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record [or] by evidence of agency bad faith," *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981) (footnote omitted).

## III. DISCUSSION

### A.  Exhaustion of Administrative Remedies

"Exhaustion of administrative remedies is generally required before seeking judicial review" under FOIA.  *Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004) (per curiam). Exhaustion allows "the agency [] an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision."  *Id.* (quoting *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 61 (D.C. Cir. 1990)).  It is not a jurisdictional requirement, *Hidalgo v. FBI*, 344 F.3d 1256, 1258 (D.C. Cir. 2003), and instead is a prudential consideration, *Wilbur*,

355 F.3d at 677.  FOIA also provides that "[a]ny person making a request to any agency for records . . . shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions of this paragraph," 5 U.S.C. § 552(a)(3)(C)(i), that is, to respond to a request within 20 working days, *see* 5 U.S.C. § 552(a)(6)(A)(i), absent unusual circumstances, *see* 5 U.S.C. § 552(a)(6)(B), such as "the need to search for and collect the requested records from field facilities or other establishments that are separate from the office processing the request," 5 U.S.C. § 552(a)(6)(B)(*iii*)(I).  If the agency fails to make a timely determination, the requester constructively exhausts his administrative remedies and may seek judicial review without first having to pursue an administrative appeal.  5 U.S.C. § 552(a)(6)(C); *Waldner v. U.S. Dep't of Justice*, 981 F. Supp. 2d 14, 16-17 (D.D.C. 2013), *aff'd*, No. 13-5350, 2014 WL 3014045 (D.C. Cir. June 4, 2014) (per curiam).

Defendants argue that plaintiff's claims against BOP "are not viable due to his failure to exhaust" administrative remedies.  Defs.' Mem. at 8.  They note that plaintiff filed this lawsuit on November 4, 2019, *before* BOP's response to FOIA 2019-01567 and to OIP.  *See id.* at 11.  Further, defendants note that plaintiff did not appeal BOP's response to FOIA 2019-03024 at all, "instead proceeding with this lawsuit . . . prematurely."  *Id.* at 11-12.  Plaintiff responds – correctly – that he constructively exhausted his claims.  *See* Pl.'s Opp'n at 9-10.

 "Under FOIA's statutory scheme, when an agency fails to comply in a timely fashion with a proper FOIA request, it may not insist on the exhaustion of administrative remedies unless the agency responds to the request before suit is filed."  *Pollack v. Dep't of Justice*, 49 F.3d 115, 118-19 (4th Cir. 1995), *cert. denied*, 516 U.S. 843 (1995).  Based on defendants' own submissions, BOP did not respond timely to either FOIA request, and fails to demonstrate that that unusual circumstances warranted an extension of its response time.

**B. Adequacy of BOP's Search for Responsive Records**

An agency "fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (citations and internal quotation marks omitted).  "[T]he adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003).  The Court may rely on an agency's "reasonably detailed [declarations], setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Valencia-Lucena*, 180 F.3d at 326 (quoting *Oglesby*, 920 F.2d at 68) (internal quotation marks omitted).

Plaintiff argues that BOP's search for records responsive to FOIA 2019-03024 was inadequate.  *See generally* Pl.'s Opp'n at 13-14.  The request pertains to civil actions against BOP and BOP employees at USP Lewisburg, to include such information as party names, nature of the case, terms of settlement agreements, and monetary compensation awarded.  *See generally* First Eichensehr Decl., Ex. F.  Plaintiff explains that the six pages BOP released pertain to only four civil actions, and he presumes that "there were more than 4 cases rendered against the BOP or BOP employees due to conduct of BOP officials employed at USP Lewisburg, which has been open for almost 100 years."  Pl.'s Opp'n at 13.  He correctly notes that BOP did not provide any information about the search conducted, without which there is no "evidence that it properly and adequately conducted a search."  *Id.* at 14.

Insofar as plaintiff sought judicial records, BOP advised that such records might be "access[ed] through the prison law library," First Eichensehr Decl., Ex. G, or "through the

publicly available docket information contained in the Public Access to Court Elecronic Records ('PACER') database," Second Eichensehr Decl. ¶ 9.  Nevertheless, BOP's declarant explained,  a search of the "Content Manager system, which indexes civil cases involving the BOP or its staff since its implementation in 2007," has been conducted.  *Id*. ¶ 8.  According to the declarant, "[a] search for all cases ending in judgment against the BOP or settlement," *id.* ¶ 9, yielded four cases identified in the materials disclosed in full to plaintiff, *see id.*; *see generally* First Eichensehr Decl., Ex. H.  Further, the declarant explained, "[p]ursuant to the BOP's records disposition policy, records except for attorney work-product are disposed of twelve years following the closing of the case," and paper case files are disposed of "ten years following the closing of the case."  Second Eichensehr Decl. ¶ 8.  Consequently, any responsive records maintained by BOP and responsive to FOIA 2019-03024 would have been located in its Content Manager system. *See id*.

The Court concludes that BOP's searches for records about court cases was adequate and reasonable under the circumstances of this case.

### C. Exemption 6[3]

Exemption 6 protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  The Court's first task in assessing whether non-disclosure is warranted is to determine whether the responsive records are personal, medical or similar files.  *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1228 (D.C. Cir. 2008).  Next, the Court must determine

---

[3]  BOP invoked Exemption 7(C) in addition to Exemption 6 to withhold information about its staff members.  *See* First Eichensehr Decl., Ex. B at 6; Reply at 5-6.  Because its supporting declarations do not demonstrate that the responsive "records or information [were] compiled for law enforcement purposes," 5 U.S.C. § 552(b)(7)(C), it does not appear that Exemption 7(C) applies.

whether disclosure of the third-party information "would constitute a clearly unwarranted invasion of personal privacy." *Id.* (quoting 5 U.S.C. § 552(b)(6)). "This second inquiry requires [the Court] to balance the privacy interest that would be compromised by disclosure against any public interest in the requested information," *id.* (citations omitted), after having "determine[d] whether disclosure would compromise a substantial, as opposed to *de minimis*, privacy interest, because if no significant privacy interest is implicated FOIA demands disclosure." *Multi Ag Media*, 515 F.3d at 1229 (quoting *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989), *cert. denied*, 494 U.S. 1078 (1990)) (internal quotation marks, brackets and ellipses removed). "A substantial privacy interest is anything greater than a *de minimis* privacy interest." *Id.* at 1229-30 (citation omitted). Only if there were a substantial privacy interest at stake does the Court "address the question whether the public interest in disclosure outweighs the individual privacy concerns." *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 35 (D.C. Cir. 2002). The only relevant public interest the Court must consider is the underlying purpose for the enactment of FOIA: to "shed[] light on an agency's performance of its statutory duties[.]" *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 762 (1989).

"Plaintiff concedes that the information withheld is contained in personnel, medical or similar files," and challenges BOP's determination that its release "would . . . constitute a clear invasion of personal privacy." Pl.'s Opp'n at 11. He disputes BOP's rationale for withholding "past and present personal identifiable information on staff at USP Lewisburg," First Eichensehr Decl., Ex. B at 6, that disclosure "directly implicates the privacy interests of those individuals about whom prior duty station information was requested," Second Eichensehr Decl. ¶ 4.

Plaintiff responds that "[t]he type of information (names and employment posts) [he] seeks is not the type of information that exemption 6 was/is meant to encompass, as the BOP officials do not occupy 'sensitive occupations' within 'sensitive agencies.'" Pl.'s Opp'n at 12 (quoting *Long v. OPM*, 692 F.3d 185, 192 (2d Cir. 2012)). He merely wants to know "who occupies the government post, how much tax dollars are used to pay his or her salary, and how the government official has moved from post to post," thereby contributing to the public's understanding of how a federal government agency deploys its resources. *Id.*

There is no rule "that disclosure of a list of names and other identifying information is inherently and always a significant threat to the privacy of the individuals[.]" *U.S. Dep't of State v. Ray*, 502 U.S. 164, 176 n.12 (1991); *see Jud. Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 153 (D.C. Cir. 2006) (stating that Exemption 6 "does not categorically exempt individuals' identities, though, because the 'privacy interest at stake may vary depending on the context in which it is asserted.'") (quoting *Armstrong v. Executive Office of the President*, 97 F.3d 575, 582 (D.C. Cir. 1996)); *Wood v. FBI*, 432 F.3d 78, 88 (2d Cir. 2005) ("Names and other identifying information do not always present a significant threat to an individual's privacy interest.").

Here, BOP asserts the existence of third parties' privacy interest without indicating whether the interest is significant or *de minimis*, without identifying a threat to that interest if information were disclosed, without describing "a causal relationship between the disclosure and the threatened invasion of privacy," *Horner*, 879 F.2d at 878, and without stating whether BOP actually weighed the third parties' privacy interest against the public's interest in disclosure. Without additional information, the Court cannot determine whether BOP's reliance on Exemption 6 is justified.

**D. Exemption 7**[4]

**1. Law Enforcement Records**

Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," 5 U.S.C. § 552(b)(7), but only to the extent that disclosure of such records would cause an enumerated harm, *see FBI v. Abramson*, 456 U.S. 615, 622 (1982).  "To show that . . . documents were compiled for law enforcement purposes, the [agency] need only establish a rational nexus between the investigation and one of the agency's law enforcement duties and a connection between an individual or incident and a possible security risk or violation of federal law."  *Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011) (internal quotation marks and citations omitted).

ATF's declarant explains that the agency is responsible for investigating criminal and regulatory violations of federal law regarding firearms, explosives, and arson, and enforcement of Chapter 40 of Title 18 of the United States Code on the importation manufacture, distribution and storage of explosives.  *See* Siple Decl. ¶ 10.  The agency "requires that all dealers of explosives register as FELS and requires that all handlers maintain 'user permits," *id.* ¶ 13, and that the "list of FELs[] is prepared in accordance with the ATF's responsibility to enforce Federal explosives law," *id.* ¶ 10.  Thus, the ATF demonstrates that the list of FELs has been compiled for a law enforcement purpose and falls within the scope of Exemption 7.

---

[4]  ATF initially invoked both Exemption 6 and Exemption 7(F) to withhold information about FELs, *see* Siple Decl. ¶ 4, and now invokes Exemption 7(C) also, *see id.* ¶¶ 9-11.  Because ATF adequately has demonstrated that information about FELs is compiled for law enforcement purposes, the Court need not consider whether Exemption 6 applies to the same material.  *See Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1173 (D.C. Cir. 2011) (concluding that, where "all documents responsive to [plaintiff's FOIA] requests . . . were compiled for law enforcement purposes," the court "focus[es] on Exemption 7(C) rather than Exemption 6 since it is the broader of the two").

## 2. Exemption 7(C)

Exemption 7(C) protects from disclosure information in law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552 (b)(7)(C). "On the privacy interest side of the scale, Exemption 7(C)'s protective standard derives from the fact that the very mention of an individual's name in law enforcement records could engender comment and speculation and carries a stigmatizing connotation." *Codrea v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 1:21-cv-2201, 2022 WL 4182189, at *6 (D.D.C. Sept. 13, 2022) (citing *Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1174 (D.C. Cir. 2011)) (additional citation and internal quotation marks omitted). An agency categorically may withhold information about third parties, including "investigators, suspects, witnesses, and informants," *Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 661 (D.C. Cir. 2003), mentioned in law enforcement records "unless access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure," *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1206 (D.C. Cir. 1991).

In determining whether Exemption 7(C) applies to particular information, the Court must balance the third parties' interest in privacy against the public interest in disclosure. *See Am. Civil Liberties Union v. U.S. Dep't of Justice*, 655 F.3d 1, 6 (D.C. Cir. 2011). As is true under Exemption 6, the public interest "focuses on the citizens' right to be informed about what their government is up to." *Reporters Comm.*, 489 U.S. at 773 (citation and internal quotation marks omitted).

ATF withholds in full information about FELs in Pennsylvania.  Its declarant explains

that, "[g]iven the inherently dangerous propensity of explosives," any handler of explosives must

obtain a user permit from the ATF, Siple Decl. ¶ 6, and each user permit "contain[s] personal

and/or contact information which is not voluntarily held out to the public," *id*.  Although FFLs

"voluntarily hold themselves out to the public" for their firearms-related business, FELs do not.

*Id.*  The declarant asserts that FELs have a substantial privacy interest in the information at issue,

*see id*., which "outweigh[s] any public interest in the names and identifying information [about]

individual persons listed or discussed within the records at issue," *id.* ¶ 11; *see id*. ¶ 8.

Plaintiff challenges ATF's reliance on Exemption 7(C).  In his view "the FEL list . . . is

not an investigatory record that threatens to invade the privacy of anyone on the FEL list."  Pl.'s

Opp'n at 17.  Here, plaintiff misunderstands the scope of the exemption.  The records need not

pertain to a particular investigation; rather, they need only be compiled for a law enforcement

purpose.  *See, e.g., Rojas-Vega v. U.S. Immigr. & Customs Enf't*, 302 F. Supp. 3d 300, 309

(D.D.C. 2018) (finding records related to enforcement of immigration and naturalization laws

met threshold); *Vazquez v. U.S. Dep't of Justice*, 887 F. Supp. 2d 114, 117 (D.D.C. 2012)

(finding that records maintained in FBI's National Crime Information Center are compiled for

law enforcement purposes), *aff'd*, No. 13-5197, 2013 WL 6818207 (D.C. Cir. 2013); *see also*

*Wash. Post Co. v. Special Inspector Gen. for Afghanistan Reconstr.*, No. 1:18-cv-2622, 2020 WL

5530308, at *11 (D.D.C. Sept. 15, 2020) (finding that while information-gathering program of

law enforcement agency was "not necessarily operating in pursuit of a criminal investigation,"

threshold was met as program did "help serve the law enforcement goals of the agency as a

whole").  Plaintiff does not refute ATF's assertion that information about FELs is compiled for

the enforcement of federal laws governing the importation, manufacture, distribution and storage of explosive materials.

Next, plaintiff challenges ATF's assertion that the third parties have a protectable privacy interest, *see* Pl.'s Opp'n at 15, but his arguments are misdirected towards the public's interest in knowing "who possesses . . . explosives and where they are being stored, as explosives [in] the wrong hands and storage conditions pose[e] a threat to the . . . public . . . particularly in the case of <u>private</u> persons" who have explosives, *id*. at 16 (emphasis in original). In plaintiff's opinion, explosives do not pose a greater threat than firearms, *see id.* at 15, yet FFLs are released while FELs are withheld, and he faults the ATF's failure to "precisely outline <u>how</u> divulging the FEL list . . . will threaten the personal privacy of persons on the list." *Id.* at 17 (emphasis in original).

The Court concludes that information about FELs properly is withheld under Exemption 7(C). ATF adequately demonstrates that this information is compiled for law enforcement purposes, and that personally identifying information therein implicates FELs' substantial privacy interest. *See, e.g., Chase v. U.S. Dep't of Justice*, 301 F. Supp. 3d 146, 155 (D.D.C. 2018) ("Given the personal nature of the information withheld here—e.g., names and phone numbers of third parties, medical personnel, and law-enforcement agents—the Court finds a substantial privacy interest in the materials."). Release of names and locations of persons authorized to manufacture, distribute and store explosives in Pennsylvania reasonably could be expected to constitute an unwarranted invasion of their personal privacy, and plaintiff proffers no substantial public interest in disclosure to outweigh the privacy interest at stake.

### 3. Exemption 7(F)

Exemption 7(F) protects from disclosure information contained in law enforcement records that "could reasonably be expected to endanger the life or physical safety of any

individual." 5 U.S.C. § 552(b)(7)(F). "Disclosure need not definitely endanger life or physical safety; a reasonable expectation of endangerment suffices." *Pub. Emps. for Env't Resp. v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mexico*, 740 F.3d 195, 205 (D.C. Cir. 2014) (citation omitted). Exemption 7(F) "does not require that a particular kind of individual be at risk of harm; 'any individual' will do." *Id*. "In reviewing claims under [E]xemption 7(F), courts have inquired whether there is some nexus between disclosure and possible harm and whether the deletions were narrowly made to avert the possibility of such harm." *Antonelli v. Fed. Bureau of Prisons*, 623 F. Supp. 2d 55, 58 (D.D.C. 2009) (citing *Albuquerque Pub. Co. v. U.S. Dep't of Justice*, 726 F. Supp. 851, 858 (D.D.C. 1989)). Within limits, the Court defers to the agency's assessment of danger. *See Pinson v. Dep't of Justice*, 236 F. Supp. 3d 338, 368 (D.D.C. 2017).

ATF relies on Exemption 7(F) to withhold information about FELs. Its declarant explains that records responsive to plaintiff's FOIA request "contain not only personally identifying information, but also location data for all privately-held explosives storage facilities within the state of Pennsylvania." Siple Decl. ¶ 13. He explains that ATF "must assume that any and all records released to the public may fall into the wrong hands," and information about FELs could enable "a nefarious actor . . . to target explosives sites for criminal or terroristic purposes." *Id.* Consequently, ATF asserts that "release of this information could reasonably be expected to pose a threat of danger to dealers, employees, and carriers, as well as any persons found in surrounding areas." *Id*.

Plaintiff's responses do not persuade the Court that ATF's reliance on Exemption 7(F) is misplaced. He posits that the exemption pertains only to the "disclosure of investigatory records if disclosure would endanger the life or physical safety of law enforcement personnel," Pl.'s

Opp'n at 17, arguing that there can be no potential risk of harm to law enforcement personnel in this "case because the FEL list consists of private dealers in explosives." *Id.* at 18. Exemption 7(F) contemplates the life or safety of *any* person, 5 U.S.C. § 552(b)(7)(F) (emphasis added), "not only the law enforcement personnel," *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 777 F.3d 518, 525 (D.C. Cir. 2015), *cert. denied*, 577 U.S. 1062 (2016), and ATF adequately demonstrates a connection between disclosure of FELs and the prospect of endangering any person's the life or physical safety. *See Peter S. Herrick's Customs & Int'l Trade Newsletter v. U.S. Customs & Border Prot.*, No. 04-00377, 2006 WL 1826185, at *9 (D.D.C. June 30, 2006) (finding that disclosure of U.S. Customs officials' identities and information regarding seized contraband could endanger life or physical safety of both Customs officials and innocent bystanders).

**III. CONCLUSION**

The Court concludes that BOP conducted reasonable searches for records responsive to plaintiff's FOIA requests, and that it failed to demonstrate that Exemption 6 justifies its decision to withhold certain potentially responsive records about its employees. In addition, the Court concludes that ATF properly withheld in full information about holders of federal explosives licenses in Pennsylvania under Exemptions 7(C) and 7(F).

Accordingly, it is hereby

ORDERED that defendant's motion for partial summary judgment [55] is GRANTED IN PART and DENIED IN PART without prejudice. It is

FURTHER ORDERED that, by April 1, 2023, defendants either shall advise the Court that BOP has released to plaintiff information requested in FOIA No. 2019-01567 about staff at USP Lewisburg, or if BOP continues to withhold this information, defendants shall file a

dispositive motion.  If defendants file a dispositive motion, plaintiff shall file his opposition by May 1, 2023, and defendants shall file a reply by May 15, 2023.

SO ORDERED.


/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge

DATE:  February 16, 2023